UNITED STATES of America,
Plaintiff–Appellee,

v.

Brian HOYT, aka Brian Doyle,
Defendant–Appellant.

No. 87–1224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1988.

Decided March 17, 1989.

As Amended June 15 and Aug. 16, 1989.

Marvin S. Cahn, Claire Leary, San Francisco, Cal., for defendant-appellant.

Joseph P. Russoniello, U.S. Atty., Samuel Wong, Asst. U.S. Atty., San Jose, Cal., for plaintiff-appellee.

Before BOOCHEVER and BRUNETTI *, Circuit Judges, and STEPHENS ** District Judge.

STEPHENS, Senior District Judge:

On January 22, 1987, Drug Enforcement Agency (DEA) agents arrested appellant Brian Hoyt while Hoyt was in the process of selling five kilograms of cocaine to an undercover agent, Mark Nelson. A one count indictment charged Hoyt with violating 21 U.S.C. § 841(a)(1)—possession with intent to distribute five thousand grams or more of cocaine. On May 13, 1987, a jury found Hoyt guilty. On July 10, 1987, Judge Aguilar sentenced Hoyt to ten years imprisonment, a five year supervised release, and a special penalty assessment of fifty dollars.[1]

At trial, Hoyt attempted to present an entrapment defense. He argued that he had no predisposition to sell cocaine to Nelson but only agreed to do so after being induced to sell the cocaine by his friend Katherine who, unbeknownst to Hoyt, was acting as a DEA informant and agent at the time. Hoyt's only evidence consisted of his own testimony. He put forth innocent explanations for incriminating evidence found at his home and in his safe deposit boxes. He described how Katherine had repeatedly asked him to sell co-

---

* Judge Brunetti was drawn to replace Judge Anderson.

** Honorable Albert Lee Stephens, Jr. Senior United States District Judge for the Central District of California, sitting by designation.

1. Hoyt has not raised on appeal the issue of the constitutionality of the special penalty assessment. We, therefore, do not address this issue, *but see United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir. 1988); *United States v. Anguiano,* 873 F.2d 1314 (9th Cir. 1989); *United States v. Montilla,* 870 F.2d 549, 553 (9th Cir. 1989).

caine so that she could use the money to move out of an allegedly uncomfortable situation at her father's house. Neither Hoyt nor the government called Katherine to testify. Judge Aguilar refused Hoyt's request to instruct the jury on entrapment. Judge Aguilar read to the jury an instruction on the role of undercover agents.

Judge Aguilar sentenced Hoyt under 21 U.S.C. § 841(b)(1)(A), which on its face requires a minimum sentence of ten years imprisonment for a violation of subsection (a) involving more than 5,000 grams of cocaine. Judge Aguilar denied both Hoyt's pre– and post-trial motions to strike the minimum mandatory ten year sentence, rejecting Hoyt's argument that the statute allowed a judge to impose a fine in lieu of a prison term. In addition to appealing Judge Aguilar's rulings on these issues, Hoyt argues on appeal that the sentencing provisions of section 841 are unconstitutional as violations of equal protection and due process, because they sentence convicted defendants based on the quantity rather than the purity of the cocaine, and as cruel and unusual punishment. Finally, Hoyt argues on appeal that certain provisions of 18 U.S.C. § 3553 unconstitutionally delegate judicial sentencing power to the executive branch.

Hoyt has timely appealed, and this court has jurisdiction under 28 U.S.C. § 1291. All of Hoyt's claims are rejected and the judgment of the district court is affirmed.

I. FACTS

Hoyt and Katherine first met in 1983, but did not become friends until August of 1986. Hoyt testified that in October or November of 1986, Katherine told Hoyt that she lived with her father but that she was 27 or 28 years old and a virgin and that her father was making sexual advances toward her so she wanted to move out, but needed money in order to do so. Katherine suggested that Hoyt sell cocaine to a friend of hers as a means of raising the necessary money. Hoyt said that he thought of Katherine as a sister and wanted to help her, but rejected her idea of raising money by selling cocaine. Accord-

ing to Hoyt, he offered to lend her money, but she refused out of pride.

On December 3, 1986, Katherine met with DEA agents in their San Francisco office. From that date forward it can be assumed that she became an informer and agent of the DEA. Agents for the DEA instructed Katherine to arrange a meeting between Hoyt and agent Nelson and to tell Hoyt that Nelson was interested in buying cocaine. Hoyt, Katherine, and Nelson met in the Catalyst nightclub in Santa Cruz at 12:30 A.M. on December 19, 1986. Agent Nelson testified that Hoyt initiated a conversation about cocaine by saying that he had 2–3 ounces of cocaine in his possession and asked Nelson if he wanted to play a game of "show and tell," a term the agent took to be an invitation to sell drugs. Nelson declined, but told Hoyt that he would call him after returning from a trip for the Christmas holidays. Hoyt denies that he made these statements and testified that he was intoxicated. Agent Nelson disputed Hoyt's version.

Hoyt traveled to New York for Christmas and New Year's. During that time, Katherine stayed in Hoyt's home as a house sitter. Hoyt claims that Katherine telephoned to him several times inferentially from his home in this period to renew her pleas that he arrange a cocaine sale for her. The DEA instructed Katherine to set up a meeting between Nelson and Hoyt. After a series of phone calls between Hoyt and the agent, the two met on January 16, 1987 at Hoyt's house to negotiate the cocaine sale.

During the meeting, Hoyt produced a half kilogram plastic bag of cocaine for Nelson's inspection. When he opened the bag, he told Nelson to "smell the ether," a reference to a solvent used in cocaine. Hoyt calculated the price of a five kilogram cocaine sale at $140,000 and requested payments of the money in $50 and $100 bills. Hoyt said that his profit would be $10,000. He instructed Nelson to call him when the money arrived, but not to refer to "cocaine" or "money" on the phone. Instead, he suggested, Nelson should talk about "carpets," because Hoyt said he had a rug

business. Hoyt boasted to Nelson that he could sell him pharmaceutical cocaine, a rare type of extremely high grade cocaine, and he also said that he could supply ten kilograms of cocaine on 24 hours notice.

The drug sale and arrest occurred in Hoyt's home on January 22, 1987. Earlier that day, Miguel Barasota had brought the cocaine to Hoyt's house. When agent Nelson arrived, Hoyt used a flashlight in an unsuccessful attempt to detect the radio transmitter that Nelson had concealed in his clothing. The entire transaction was recorded, and the tape was played for the jury.

Hoyt brought out five kilograms of cocaine and used a triple beam scale to measure the drug into equal portions in plastic bags. During the weighing, Hoyt carefully set the scale to compensate for the 10.5 gram weight of the plastic bags to ensure an exact one kilo measure of cocaine in each bag. He again told agent Nelson to "smell the ether," and when the agent made a mistake in conducting a "hotbox test," Hoyt instructed him on the proper procedures for testing the purity of the drug by using small particles of "duff" to test the substance's melting point.

During the weighing, Hoyt manifested his familiarity with cocaine and cocaine dealing. He bragged about two prior cocaine sales, one of a kilo to a local resident for $30,000 and another of a kilo to some Canadians for $32,000. He complained of finding rocks and pieces of clothing thrown in as filler in cocaine he had previously purchased, but he referred to the "R series" wrappings and markings as indicating that the package had come straight from Columbia and was a shipment of high quality drugs. Hoyt again claimed that he could deliver a large quantity of drugs (11 kilograms) on short notice if Nelson could ensure swift payment for the five kilograms. Hoyt told Nelson he was nervous about the fact that Nelson's "bagman" (the person with the money) was waiting outside in the neighborhood, because everyone knew everyone else there and Hoyt was afraid the bagman would be detected. Hoyt also told Nelson that he had been "fucking with cocaine" for the past 25 years.

Nelson left the house on the pretext of getting the money. On his signal, waiting agents arrested Hoyt, advised him of his constitutional rights and searched the house. They found incriminating evidence including a tupperware container with an eyedropper, a bottle of alcohol (which Hoyt admitted to using to clean cocaine, but also to clean gemstones for an alleged business he had), a lighter, a spoon and a bottle of acetone which is a solvent used for purifying cocaine. In one part of the house, agents found a police radio scanner and a notebook next to it that contained the frequencies for the local police, the FBI, and the DEA. They found a series of low altitude flying maps of the Caribbean, Columbia, Venezuela, and Florida and several "how to" books on the use of cocaine. Finally, the agents discovered three loaded firearms consisting of two handguns and a shotgun with the stock reduced to a pistol handle for easy concealment.

Agents executed warrants to search Hoyt's safe deposit boxes and found $26,000 in cash, ten grams of cocaine, and 13 more firearms, three of which were loaded.

After his arrest, Hoyt lied to the police on three separate occasions in an attempt to conceal the source of his cocaine supply. On the day of his arrest, Hoyt claimed that he had found the cocaine on the street. Later he changed his story to say that a man named "Ray," whose last name Hoyt could not remember, brought the cocaine to his house. Eventually before trial, Hoyt revealed the true identity of his supplier, but by that time Barasota and his wife had fled.

At trial, Hoyt produced documents to support his contention that he earned his income through various personal businesses and not through cocaine sales. Most of the documents related to the years 1984 and earlier, seven related to 1985, and two related to 1986, one from January 23rd and the other from March 11th, ten months before the cocaine sale.

## II. ENTRAPMENT

Hoyt's first issue on appeal is whether the trial court improperly refused to give the jury Hoyt's requested entrapment instruction. In this circuit, there are two lines of cases setting out different standards of review.[2] One line of cases holds that the standard of review is abuse of discretion, *United States v. Busby*, 780 F.2d 804, 806 (9th Cir.1986), and the other holds that the standard of review is de novo. *See United States v. Brandon*, 633 F.2d 773, 778 (9th Cir.1980) (holding that review of a trial court's decision not to give an entrapment instruction is a matter of law). It is not necessary to resolve this conflict in this case because the result is the same under either standard.

"The defense of entrapment has two elements: (1) the defendant was induced to commit the crime by a government agent, and, (2) he was not otherwise predisposed to commit the crime." *United States v. Barry*, 814 F.2d 1400, 1401 (9th Cir.1987). When the defendant presents some evidence of both elements of the entrapment defense, the burden shifts to the prosecution to prove beyond a reasonable doubt either that there was no inducement or that the defendant was predisposed to commit the crime. *Id.* at 1402.

Before the issue of entrapment may reach the jury the trial judge must decide that there is a genuine issue of fact for the jury. *United States v. Glaeser*, 550 F.2d 483, 487 (9th Cir.1977). If the trial judge finds that the defendant has not presented sufficient evidence to show both inducement and lack of predisposition, the trial judge is obliged to deny the requested instruction. *Id.; United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983).

Similarly, if the prosecution has rebutted a showing of either inducement or a claim of lack of predisposition so that no rational jury could entertain a reasonable doubt as to either element, the trial judge's duty is to deny a request to give the entrapment instruction. *U.S. v. Glaeser*, 550 F.2d at 487.

The "principal element of entrapment [is] the defendant's predisposition to commit the crime." *United States v. Russell*, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). The trial court found that "there was sufficient predisposition and proclivity on the part of the defendant to do the acts for which he is presently before the court." The parts of the record already mentioned above support this finding. Given the substantial and overwhelming evidence[3] of Hoyt's ongoing

2. Early cases hold that a judge's decision not to give a jury an entrapment instruction is a question of law. *United States v. Glassel*, 488 F.2d 143, 146 (9th Cir.1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974) ("When the evidence presents no genuine dispute as to whether the defendant was entrapped, there is no factual issue for the jury, and the judge then has a duty to rule on the defense as a matter of law."); *United States v. Payseur*, 501 F.2d 966, 971 (9th Cir.1974); *United States v. Glaeser*, 550 F.2d 483, 487 (9th Cir.1977); *United States v. Brandon*, 633 F.2d 773, 778 (9th Cir.1980); *United States v. Shapiro*, 669 F.2d 593, 598 (9th Cir.1982); and *United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983) *and* 465 U.S. 1038, 104 S.Ct. 1314, 79 L.Ed.2d 711 (1984).

Questions of law are reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.)(en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

*United States v. Diggs*, 649 F.2d 731, 739 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70

L.Ed.2d 387 (1981) (citing *Glaeser*) and *United States v. Fleishman*, 684 F.2d 1329, 1342 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982) (citing *Shapiro* and *Diggs*) hold that abuse of discretion is the standard. Abuse of discretion is also cited as the standard by *United States v. Lee*, 846 F.2d 531, 534 (9th Cir.1988); and *United States v. Busby*, 780 F.2d 804, 806.

Some cases have criticized or questioned the abuse of discretion standard. *United States v. Ibarra–Alcarez*, 830 F.2d 968, 973 n. 1 (9th Cir. 1987) (saying that *Diggs* and *Fleishman* have been overruled *sub silentio* by *McConney*); *United States v. Doubleday*, 804 F.2d 1091, 1093 (9th Cir.1986).

3. Defense counsel argues that the trial court imposed too low a burden of proof on the government when the court stated, "[t]he court, by that, is finding that by a preponderance of the evidence, the court finds that the government has rebutted any evidence of inducement presented by the defendant: inducement mean-

involvement in drug trading, Judge Aguilar did not abuse his discretion in refusing to give the requested jury instruction. Furthermore, no rational jury could have entertained a reasonable doubt as to Hoyt's predisposition to sell cocaine. Applying either an abuse of discretion or a de novo review standard, we reach the same result and affirm Judge Aguilar's decision to refuse to read the entrapment instruction to the jury.

## III. UNDERCOVER AGENT INSTRUCTION

██ Hoyt raises for the first time on appeal the contention that the trial court erred by reading the undercover agent instruction [4] to the jury. Since there was no objection to the instruction at the trial, we review for plain error. *United States v. Benny,* 786 F.2d 1410, 1416 (9th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); Fed.R.Crim.P. 30, 52(b). The undercover agent instruction serves to dispel juror concerns over the propriety of governmental undercover ac-

tivity. It does not, as appellant suggests, instruct the jury that the government witnesses are to be believed in all cases.

Hoyt argues that it was prejudicial for the trial judge to read the undercover instruction when no entrapment defense instruction was given. This is a question of first impression for this court. *United States v. Fera,* 616 F.2d 590 (1st Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980) is instructive. In *Fera,* the trial court declined to give an entrapment instruction, but read the jury an instruction [5] similar to the one in this case, "in response to defendant's repeated suggestions to the jury throughout the trial that the Government's conduct in using undercover agents and informers was improper." 616 F.2d at 597. The First Circuit held that, in light of the questions raised by the defendant and cautionary instructions given, the trial court did not err in giving the instruction. *Id.*

██ Because Hoyt did not object to the undercover instruction at trial, it is not

ing that he was induced to commit a crime for which he had no prior predisposition." While defense counsel is correct that the government must carry its burden of proof beyond a reasonable doubt, it need only have done so to rebut one of the two elements of the entrapment defense. The quoted finding relates to inducement. Since we have already found that the trial judge made a finding supported by ample evidence that the defendant was predisposed to sell cocaine, we need not review the inducement finding.

**4.** The court instructed the jury using the following undercover agent instruction approved by this court in *United States v. North,* 746 F.2d 627, 630–31 (9th Cir.1984):

The Government has presented testimony of undercover agents involved in its investigation of this case. Indeed, much of the evidence that has been introduced was derived directly or indirectly from the use of these agents.

In drug-related offenses, law enforcement personnel have turned to one of the only practicable means of detection, the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation necessary to gather evidence of illegal conduct. An agent does not violate any federal statute or rule or commit any crime in infiltrating the drug enterprise.

The undercover activity may take many forms, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship.

A solicitation, request or approach by law enforcement officials to engage in criminal activity standing alone is not an inducement. Law enforcement officials are not precluded from utilizing artifice, stealth, and stratagem, such as the use of decoys and undercover agents in order to apprehend persons engaged in criminal activities, provided that they merely afford opportunities or facilities for the commission of the offense by one predisposed or ready to commit it.

They may properly make use of undercover operations in which they use false names and false appearances. They may properly assume the roles of members of criminal organizations.

**5.** The district court instructed the jury that it is "sometimes necessary and permissible for the Government to use stratagems, artifices, ruses and undercover agents or investigators who may use assumed names and conceal their true identity and who, in order to discover violators of the Federal criminal laws, present opportunities to violate those laws to those who are predisposed, ready and willing to violate those laws." 616 F.2d at 596.

necessary to decide whether it is proper to give such an instruction in the absence of an entrapment instruction, but only whether it was plain error in this case. In his opening statement, Hoyt's defense counsel characterized the government informant's behavior as "improper." Hoyt himself testified at length to the conduct of the informer. In light of the appellant's persistent insinuation that the agent acted improperly, Judge Aguilar did not commit plain error by giving the undercover agent instruction to help the jury understand the nature of undercover police work.

## IV. MANDATORY SENTENCING UNDER 21 U.S.C. § 841(b)(1)(A)

The trial court sentenced Hoyt to a ten year sentence of imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). The trial court interpreted the statute to require a mandatory minimum sentence of ten years. The trial court's interpretation of the statute's meaning is a question of law reviewed under a *de novo* standard. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The interpretation of this portion of the statute is a question of first impression for this circuit. The thorough and well expressed reasoning of the district court in *United States v. Restrepo*, 676 F.Supp. 368 (D.Mass.1987) is helpful. The *Restrepo* court held that 21 U.S.C. § 841(b)(1) requires a mandatory prison sentence. We agree.

In pertinent part, 21 U.S.C. § 841(b)(1)(A) reads:

> [A]ny person who violates subsection (a) ... [i]n the case of a violation ... involving ... 5 kilograms or more of ... cocaine ... shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life ..., a fine ..., or both.

Taken alone this language creates an ambiguity. It is not clear whether the statute allows a trial court to choose either to sentence a convicted defendant to a term of imprisonment, impose a fine, or sentence to a term of imprisonment and impose a fine. Later language in the same section strongly supports the view that all convicted defendants must serve a term of imprisonment:

> Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

These two sentences show the statute contemplates that every sentence under 21 U.S.C. § 841(b)(1)(A) will result in a term of imprisonment. As the *Restrepo* court noted, this language caused the words "such person shall be sentenced to a term of imprisonment ... a fine ... or both" to "describe the possible sentences as either a mandatory prison term or both a mandatory prison term and fine." 676 F.Supp. at 372.

Any doubt as to the meaning of 21 U.S.C. § 841(b)(1)(A) evaporates upon examining the legislative history, which supports the contention that a minimum prison sentence of ten years was intended for all first time offenders of § 841. The Congressional Record is replete with statements by Senators as to the effect of S. 2878. The statements of then Minority Leader Byrd are illustrative:

> [The would be criminal] must know that no matter how good a lawyer he gets ... that lawyer will not be able to keep him out of jail once he has been found guilty.
>
> .    .    .    .    .    .
>
> [T]he language I originally proposed ... will require that for certain crimes involving drugs, the convicted defendant must—I repeat must—be sentenced to the penitentiary.

132 Cong.Rec. S14,301 (daily ed. Sept. 30, 1986).

Hoyt does not contend that the legislative history is ambiguous on this subject. Instead, he suggests that the ambiguity in the statute should be resolved through application of the rule of lenity. *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). The rule

of lenity would require interpreting the ambiguity so as to provide for the more lenient of the two possible sentencing schemes. However, "the rule of lenity is merely a canon of statutory construction and may not be invoked to override a clear congressional directive to the contrary." *United States v. Littlefield*, 821 F.2d 1365, 1367 (9th Cir.1987); *United States v. McDonald*, 692 F.2d 376, 379 (5th Cir.1982), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983) ("[T]he rule of lenity is to be applied only if, after reviewing all sources of legislative intent, the statute remains truly ambiguous.").

■ In the face of unambiguous congressional intent, the rule of lenity does not apply. The statute requires a mandatory minimum ten year sentence for those convicted of selling 5,000 grams or more of cocaine.

## V. EQUAL PROTECTION AND DUE PROCESS

Hoyt attacks the constitutionality of the mandatory sentencing scheme under 21 U.S.C. § 841(b)(1)(A) on the ground that the statute sets different classifications for punishment based on the quantity rather than the purity or concentration of the drug sold.

The question of the constitutionality of this statute has been settled in the Ninth Circuit by recent cases holding the statute to be constitutional. *United States v. Savinovich*, 845 F.2d 834, 838–39 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *accord, United States v. Ramos*, 861 F.2d 228, 232 (9th Cir.1988); *United States v. Klein*, 860 F.2d 1489, 1499 (9th Cir.1988).

Hoyt's argument is that a person who sells a small quantity of very pure cocaine will be punished less severely than a person who sells a large quantity of dilute cocaine. This argument ignores that "Congress chose a 'market-oriented approach' to focus on those 'who are responsible for creating and delivering very large quantities of drugs.'" *Savinovich*, 845 F.2d at 839 (*quoting* H.R.Rep. No. 845, 99th Cong., 2d Sess. Part 1 at 12 (1986)). Under the market-oriented approach, Congress focused on the number of doses that a dealer could immediately distribute from a sale of drugs. This circuit has already found that this Congressional approach is rational. *Id.*

■ The previous cases that have upheld this statute were all concerned with 21 U.S.C. § 841(b)(1)(B), the subsection that punishes sales of over 500 grams of cocaine, whereas the subsection at issue in this case punishes sales of over 5,000 grams of cocaine. 21 U.S.C. § 841(b)(1)(A). Except for the differences in quantities of drugs and severity of punishment, each subsection is identical to the other. The equal protection and due process issues are identical as well. We hold that 21 U.S.C. § 841(b)(1)(A) is constitutional.

## VI. 8th AMENDMENT

■ Hoyt claims that a mandatory minimum sentence of ten years for a first time sentence under 21 U.S.C. § 841(b)(1)(A) is excessive and cruel and unusual punishment. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) guides the analysis of this contention. In *Solem*, the Court said:

[A]s a matter of principle ... a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is *per se* constitutional.

463 U.S. at 290, 103 S.Ct. at 3009 (footnote omitted).

In evaluating a sentence it is necessary to decide whether it is proportional to the crime and consider "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the

same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3011.

## A. *Gravity of the Offense.*

There can be no doubt that the sale of 5,000 grams of cocaine is a grave offense. When Congress amended section 841 to increase the penalties for drug sellers, it was reacting to a growing drug problem across the country.[6] The collateral consequences of this one sale—possible distribution of thousands of doses of cocaine—would have been severe. *United States v. Busher,* 817 F.2d 1409, 1415 (9th Cir.1987). Hoyt seeks to persuade the court that his was not a violent crime and therefore not a grave offense, but this court has recently rejected exactly the same argument in a case involving the sale of a lesser quantity of drugs. "Neither Congress nor the courts has treated narcotics trafficking as a 'less serious' offense or entitled offenders to the more lenient treatment often associated with 'non-violent' crimes." *United States v. Klein,* 860 F.2d at 1496.

Under *Solem,* a court "is entitled to look at a defendant's motive in committing a crime." 463 U.S. at 293, 103 S.Ct. at 3011. Hoyt tries to picture himself as an innocent brother figure attempting to help Katherine, a sisterly friend, out of a tight financial bind. He represents that he offered to lend the necessary money to Katherine who was too proud to accept a loan. Katherine was pictured as preferring to be the recipient of proceeds of a sale of cocaine to her friend, who was in reality an undercover narcotics agent. The sale would produce a profit which would supply her with the $2,500 she needed and incidentally supply between $2,500 and $7,500 to Hoyt.

## B. *Sentences for Other Crimes.*

The second *Solem* factor is a comparison of how a criminal convicted of a different offense would be treated in the same jurisdiction. As this court noted in its extensive discussion of the sentencing scheme under 21 U.S.C. § 841(b)(1)(B) in *Klein,* other federal statutes impose similar or harsher penalties for other serious federal crimes.

A leading example is 21 U.S.C. § 848(a). The penalty for operating a "continuing criminal enterprise [under 21 U.S.C. § 848(a)] may not be less that 10 years and ... may be up to life imprisonment," while a repeat offender "shall be sentenced to ... not less then 20 years [under the statute]."

.       .       .       .       .

Other federal criminal statutes impose a mandatory life sentence for the most severe grade of offense. *See,* 18 U.S.C. § 1201(a) (kidnapping), 18 U.S.C. § 1111(b) (murder), 18 U.S.C. § 1651 (piracy under law of nations), 18 U.S.C. § 34 (destruction of aircraft and motor vehicles resulting in death), and 18 U.S.C. § 1203 (hostage taking).

*Klein,* 860 F.2d at 1498.

## C. *Other Jurisdictions.*

Since 21 U.S.C. § 841(b)(1)(A) is a federal statute, it is appropriate to look both to state law and to federal rulings in this and other circuits to compare how severely convicted drug traffickers are sentenced. Several circuits, including the Ninth, have held that the provisions of this statute that provide for mandatory five year sentences of people who sell 500 grams of illegal drugs or more are constitutional. *United States v. Ramos,* 861 F.2d 228; *United States v. Klein,* 860 F.2d 1489; *United States v. Brown,* 859 F.2d 974 (D.C.Cir.1988); *United States v. Solomon,* 848 F.2d 156 (11th Cir.1988); *United States v. Savinovich,* 845 F.2d 834 (9th Cir.1988); *United States v. Holmes,* 838 F.2d 1175 (11th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988); *see also United States v. Elliott,* 849 F.2d 886, 890 (4th Cir.1988) (upholding a 30 year sentence under 21 U.S.C. § 841(b)(1)(B)); *United States v. Brandon,* 847 F.2d 625 (10th Cir.), *cert.*

---

**6.** The remarks of Senator Kennedy are typical of Congress's concern. "The widespread use of illegal drugs is one of the most pressing problems facing our society. Illegal drugs are killing children and destroying families. Vast profits from the sale of illegal drugs have created a new criminal underworld which promotes violence and feeds on death." 132 Cong.Rec. S14,282 (daily ed. Sept. 30, 1986).

*denied,* —— U.S. ——, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988) (upholding a 20 year sentence under 21 U.S.C. § 841(b)(1)(B)).

21 U.S.C. § 841(b)(1)(B), which has been held to be constitutional, provides for a minimum sentence of five years for selling 500 grams or more of cocaine. Hoyt was sentenced under 21 U.S.C. § 841(b)(1)(A) for selling 5,000 grams of cocaine. In this case, the sentence is not disproportionate.

State statutes also provide for similar mandatory minimum sentences. *See, e.g.,* Fla.Stat.Ann. § 893.135(1)(b)(3) (West 1988) (mandatory minimum of fifteen years imprisonment and a fine of $250,000 for bringing into the state more than 400 grams of cocaine); Nev.Rev.Stat. § 453.3395(3) (1987) (same); Ga.Code Ann. § 16–13–31(a)(1)(C) (Harrison Supp.1987) (mandatory minimum of 25 years in jail and a fine of $500,000 for bringing into the state more than 400 grams of cocaine). The penalties under 21 U.S.C. § 841(b)(1)(A) are not disproportionate to state law penalties for serious crimes.

The penalty provisions of 21 U.S.C. § 841(b)(1)(A) meet the proportionality test of *Solem* and do not constitute cruel and unusual punishment.

## VII. SEPARATION OF POWERS

Hoyt contends that 18 U.S.C. § 3553(e) delegates judicial sentencing authority to the executive branch in violation of the separation of powers doctrine. Section 3553(e) allows a district court, upon motion by the government, to "impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

This provision became effective on November 1, 1987. Hoyt was sentenced in July, 1987. A legislature may prospectively reduce the penalty for a crime without affecting those previously sentenced. *See Frazier v. Manson,* 703 F.2d 30, 36 (2d Cir.), *cert. denied,* 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983). Because he was sentenced prior to the effective date of § 3553(e), its purported unconstitutionality has not caused him an "actual injury redressable by the court." *See Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Thus, he does not have standing to challenge it. *See id.*

## CONCLUSION

The trial court did not err in refusing to give the entrapment instruction or in giving the undercover agent instruction. Hoyt's constitutional attacks on the sentencing provisions of 18 U.S.C. § 841 are rejected. Since Hoyt lacks standing to assert a separation of powers attack on the statute, we are without jurisdiction to consider it.

The judgment of the trial court is AFFIRMED.