**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Harold KESSEE, Defendant–Appellant.**

**No. 91–50168.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1992.

Decided May 11, 1993.

---

Gerald C. Salseda, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Bruce Riordan, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before FLETCHER, O'SCANNLAIN and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Kessee was convicted of conspiracy, possession with intent to distribute, and carrying a firearm during a narcotics transaction in connection with sales of cocaine base. 18 U.S.C. § 924(c)(1); 21 U.S.C. §§ 841(a)(1) and 846. We reverse, because he was entitled to present his entrapment defense to the jury, and was prevented from doing so.

Kessee participated in sales of cocaine base to an undercover informant, Mohammed Bawa, on September 6 and 12, 1990. He made the introductions, effected the arrangements on the telephone, and carried a pistol in connection with these activities. Bawa received the cocaine base from and paid the money to Kessee's codefendant, Marlon "Boo" Mack, who gave Kessee a commission. After Kessee had arranged for the third sale, he was arrested.

## I. Motion to Suppress.

Kessee filed a motion to suppress statements he had made after arrest. His motion was denied because it was filed after the trial had begun. We review a denial of relief under Federal Rule of Criminal Procedure 12(f) for abuse of discretion. *See United States v. Gonzales,* 749 F.2d 1329, 1336 (9th Cir.1984).

Jury selection took place on December 11. The trial court invited counsel to make opening statements prior to voir dire, and the government did so. In its statement, the government proposed to prove that Kessee pointed out "Boo" driving by, and that Kessee said, "That's him.... He was going to bring me the kilos here," and that Kessee was waiting for "Boo" to deliver "three kilos to Reggie" when he was arrested. (12/11/90

TR p. 38). The government then called its first witness. When the trial day concluded, the trial was recessed until January 2.

On December 27, Kessee moved to suppress his statements, and proposed that the motion be heard on shortened time on January 2. The motion papers said that Kessee told his lawyer after hearing the opening statement that he was not immediately advised of his rights, and that subsequent statements resulted from threats of punishment and promises of leniency.

■ Under Federal Rule of Criminal Procedure 12(b)(3), a motion to suppress evidence "must" be raised prior to trial. Kessee acknowledged that his motion was late, but urged the district court to grant relief "for cause shown" under Rule 12(f). The government claimed that the defense had been given discovery of the material upon which the government would rely on October 16, and the defense conceded that the motion was not complex, so there was no good cause to allow the motion after trial had commenced.

The trial court did not abuse its discretion in denying Rule 12(f) relief. There was no good cause shown for the lateness of the motion. *United States v. Davis*, 663 F.2d 824, 831 (9th Cir.1981); *United States v. Wood*, 550 F.2d 435, 439 (9th Cir.1976); *compare United States v. Mulder*, 889 F.2d 239, 240 (9th Cir.1989) (change in law constituted good cause).

## II. Entrapment Instruction.

■ Kessee argues that he presented some evidence on both elements of an entrapment defense, yet the district court refused to instruct the jury that entrapment was a defense. The question of what standard of review we should apply is subject to conflicting precedent within our circuit. *See United States v. Sitton*, 968 F.2d 947, 959 (9th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 478, 121 L.Ed.2d 384 (1992) *and* — U.S. —, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993); *United States v. Sotelo–Murillo*, 887 F.2d 176, 179 (9th Cir.1989). Without making any determination regarding the standard of review, we conclude that regardless

of what standard may be applicable, Kessee was entitled to an entrapment instruction.

■ A defense of entrapment is established if the defendant was (1) induced to commit the crime by a government agent and (2) not otherwise predisposed to commit the crime. *United States v. Smith*, 924 F.2d 889, 898 (9th Cir.1991). "A defendant must present evidence on both elements of the defense, but only '*slight*' evidence is needed to create a factual issue and get the defense to the jury.'" *United States v. Sotelo–Murillo*, 887 F.2d 176, 179 (9th Cir.1989) (citations omitted). "'[T]he evidence may be weak, insufficient, inconsistent, or of doubtful credibility,'" *Id.* at 178 (citation omitted), but the defendant is entitled to an instruction unless the prosecution rebuts the evidence such that "no rational jury could entertain a reasonable doubt as to either element." *United States v. Hoyt*, 879 F.2d 505, 509, *amended on other grounds*, 888 F.2d 1257 (9th Cir.1989).

Kessee took the stand, and testified that he sold the cocaine base to Mohammed Bawa, but was entrapped. Kessee testified that he met Bawa while working full-time as an accounting clerk and moonlighting as a cable television installer. He had never been involved in any narcotics sales. Bawa drove a Mercedes, flashed a roll of hundred dollar bills, and looked like a movie star. Bawa suggested to Kessee that Kessee sell drugs for him, but Kessee turned him down. But after Kessee had lost both his jobs, and did not know where he would get the money for rent and food for his family, he yielded to Bawa's repeated suggestions, and agreed to sell drugs.

Kessee's credibility suffered from cross-examination and impeachment by tapes of his telephone calls which made his story hard to believe. He denied ever calling Bawa in reference to narcotics, but the prosecutor played tapes of Kessee doing exactly that. His story had been that Bawa proposed to supply drugs to Kessee, who would sell them for Bawa, yet in the telephone conversations Kessee was proposing to sell drugs to Bawa, not for him. Kessee called ounces and kilograms "oscars" and "birds," rock and powder cocaine "hardware" and "software," as though he was familiar with the trade and

was using slang or code. He admitted that he had told the police he had done over fifty narcotics transactions with "Boo," and had made other major narcotics sales, but claimed that he was lying to the police when he made these admissions. He claimed he had only carried the gun, borrowed from a friend, because he was frightened of Bawa and "did not trust him one hundred percent." On redirect, he portrayed himself as having given himself a false appearance as a major drug dealer in the taped telephone conversations with Bawa to impress him, and having lied to the police in order to obtain a sentence reduction in exchange for cooperation.

The court denied the defense request for an entrapment instruction on the ground that there was no evidence from which a jury could find entrapment. The judge noted that Kessee said he did not trust Bawa.

We are compelled by the record in this case to conclude that a juror could have a reasonable doubt as to whether the government had sustained its burden to prove that it did not induce Kessee to break the law or that he was predisposed to commit the crime. If his story was believed, he had not previously sold narcotics, and had no inclination to sell narcotics, until Bawa proposed that he do so. Bawa induced him to sell narcotics by repeated entreaties, which only became successful when Kessee had lost both his jobs and desperately needed the money Bawa's proposal would supply. A jury could have had a reasonable doubt as to inducement or lack of predisposition. *See Sotelo–Murillo,* 887 F.2d at 181–82 (discussing these elements).

The trial judge's skepticism was certainly well-founded. At least one juror would have to be very impressed by Kessee's testimony on the stand, so impressed as to accept unlikely stories to explain the way Kessee sounded on the telephone, his inconsistencies, and his statements to the police. Nevertheless, the jury, not the trial judge, had the power to decide whether Kessee's account on the witness stand was the truth. As in *Sotelo–Murillo,* Kessee presented "some evidence" for each of the two elements of entrapment, so "[t]he weight and credibility of the conflicting testimony are issues properly resolved by the jury." 887 F.2d at 182. The

jury could have believed that Kessee knew how drug dealers talked from high school, as he claimed, and that he was falsely boasting when he described himself as a major dealer.

This is not to say that an entrapment instruction can be squeezed out of vague and tenuous possibilities and inferences. "Before the issue of entrapment may reach the jury the trial judge must decide that there is a genuine issue of fact for the jury." *Hoyt,* 879 F.2d at 509. But since Kessee testified under oath to an account which, if true, could justify a finding of entrapment, he established a genuine issue of fact. The burden was on the government to prove beyond a reasonable doubt that it did not induce Kessee to break the law, or that he was predisposed to break the law as he did before being approached by government agents. *Jacobson v. United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992); *Hoyt,* 879 F.2d at 509. Although the government's evidence made Kessee's account unlikely, it did not rebut the evidence of entrapment to such an extent that "no rational jury could entertain a reasonable doubt as to either element." *Hoyt,* 879 F.2d at 509. The trial judge was required to submit the issue of entrapment to the jury. *Sotelo–Murillo,* 887 F.2d at 182.

Since we reverse, we need not reach the sentencing issue raised on appeal.

REVERSED.