66 F.3d 337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernie TIOCAO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernie TIOCAO, Roland Palma, Defendant-Appellant,
 Nos. 92-50753, 93-50298, 93-50651.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1995.
Decided Sept. 6, 1995.
 
 1
 Before: D.W. NELSON and CANBY, Circuit Judges; TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 ERNIE TIOCAO appeals his two separate convictions for cocaine and methamphetamine drug-trafficking crimes and ROLAND PALMA appeals his conviction for methamphetamine distribution. We have jurisdiction over these appeals under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742 and we affirm Tiocao's conviction but vacate his sentence and remand for resentencing. We reverse Palma's conviction and remand for a new trial.
 
 TIOCAO
 
 4
 Tiocao raises four issues on appeal: (1) the failure of the district court to consolidate his two indictments; (2) the failure of the district court to reduce his sentence under U.S.S.G. Sec. 3B1.2; (3) the failure of the district court to depart downward as to his sentence; and (4) the district court's imposition of consecutive sentences. We will address each issue in turn.
 
 1. Consolidation
 
 5
 On approximately August 23, 1992, Tiocao filed a motion in CR92-254 JGD (Tiocao 2) to consolidate this case with CR92-261 RSWL (Tiocao 1). It was not filed in Tiocao 1. The government consented to the consolidation conditioned on the denial of any possible severance motion by Palma. The motion was argued on August 31, 1992 before district court Judge Davies and was denied. The trial in Tiocao 1 before district court Judge Lew commenced on September 1, 1992. The Tiocao 2 jury was empaneled on November 10, 1992 and trial began on November 17, 1992. Tiocao changed his plea from not guilty to guilty to all six counts on November 18, 1992. There was no plea agreement.
 
 
 6
 Once a plea of guilty is entered, the defendant has waived his right to challenge pretrial rulings of a constitutional nature unless they are jurisdictional. United States v. Caperell, 938 F.2d 975, 977 (9th Cir.1991) citing United States v. Montilla, 870 F.2d 549 (9th Cir.1989) amended at 907 F.2d 115 (9th Cir.1990). Jurisdictional claims can be determined by looking at the face of the indictment or the record at the time. Id.
 
 
 7
 A motion to consolidate, while it can implicate constitutional rights such as due process, does not touch upon jurisdictional issues such as the failure to state an offense or the unconstitutionality of a particular statute. See Id. Tiocao, by pleading guilty unconditionally has waived his right to appeal the denial of his motion to consolidate.
 
 
 8
 2. U.S.S.G. 3B1.2 Adjustment.
 
 
 9
 The decision by the district court as to a defendant's role in the offense is a factual determination. The decision to apply U.S.S.G. Sec. 3B1.2 is reviewed for clear error. United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989).
 
 
 10
 The guidelines provide that in appropriate circumstances, a defendant's base offense level may be decreased due to his role in the offense. A reduction under Sec. 3B1.2 is to be used "infrequently and only in exceptional circumstances." United States v. Taren-Palma, 997 F.2d 525, 535 (9th Cir.1993). It is the defendant's burden to show that he is entitled to the reduction by a preponderance of the evidence. Id. The comparison is between the defendant seeking the reduction as a minimal participant and his codefendants. United States v. Petti, 973 F.2d 1441, 1447 (9th Cir.1992).
 
 
 11
 On appeal, Tiocao only argues for the Sec. 3B1.2 reduction in the methamphetamine case. Our review of the record clearly demonstrates that the court considered the factors set forth by the defendant and made factual findings on them. The court found that Tiocao produced no evidence of lack of knowledge (thereby failing to meet his burden of proof) and found that the transaction would not have occurred without his participation. The district court's factual determinations were not clearly erroneous.
 
 
 12
 3. Downward Departure.
 
 
 13
 This court reviews de novo the district court's authority to depart from the applicable guidelines range. United States v. Valdez-Gonzalez, 957 F.2d 643, 647 (9th Cir.1992); United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991).
 
 
 14
 Tiocao in Tiocao 2 sought a downward departure below the mandatory minimum term of 10 years. In his sentencing memorandum he sought a downward departure pursuant to USSG Sec. 5K2.0 and 18 USC Sec. 3553(b) on the grounds that he was "imperfectly entrapped" and that based upon the failure to consolidate his cases, his criminal history was overstated. Tiocao's reliance on cases where departure was warranted for the overstatement of criminal history, e.g. United States v. Brown, 985 F.2d 478 (9th Cir.1993) is misplaced because those cases do not involve mandatory minimums. We have consistently held that a district court may not depart below the mandatory minimum absent a motion by the government pursuant to USSG Sec. 5K1.1. United States v. Sharp, 883 F.2d 829, 831 (9th Cir.1989); United States v. Valente, 961 F.2d 133, 134-5 (9th Cir.1992). There was no 5K1.1 motion filed in this case. The district court stated "the court cannot depart below the 10, the mandatory minimum. There is no legal or factual basis whatsoever for such a departure." The district court, therefore, did not err in so ruling.
 
 
 15
 4. Consecutive Sentences.
 
 
 16
 This court reviews de novo the district court's interpretation and application of the sentencing guidelines. United States v. Blaize, 959 F.2d 850, 851 (9th Cir.) cert. denied, 112 S.Ct. 2954 (1992).
 
 
 17
 The government urged the district court to consider USSG Sec. 5G1.3(c) when sentencing Tiocao. The district court did not speak to Sec. 5G1.3 nor did the presentence report. Tiocao now asserts this as error and the government concedes the error.
 
 
 18
 Section 5G1.3(c) is "intended to result in an appropriate incremental punishment for the instant offense that most nearly approximates the sentence that would have been imposed had all the sentences been imposed at the same time." See USSG Sec. 5G1.3, comment. (background). Under section 5G1.3(c), a district court may order a concurrent or a consecutive term of imprisonment. See USSG Sec. 5G1.3, comment. (n. 3). However, before doing so, the court "must attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology." United States v. Redman, 35 F.3d 437, 441 (9th Cir.1994). Although the district court may ultimately reject the commentary methodology, the district court must "state its reasons for abandoning the commentary methodology in such a way as to allow us to see that it has considered the methodology." Id.; see also United States v. Conkins, 9 F.3d 1377, 1385 (9th Cir.1993).
 
 
 19
 In order to determine an appropriate incremental punishment for the instant offenses, the district court, under the commentary methodology, should: (1) estimate the total punishment which would have been imposed under USSG Sec. 5G1.2 (Sentencing on Multiple Counts of Conviction) had both the sentences been imposed at the same time: (2) calculate a reasonable incremental penalty for the instant offense which, when combined with the undischarged term of imprisonment, most nearly approximates the total punishment which would have been imposed had both the sentences been imposed at the same time; and (3) decide whether a concurrent sentence would be sufficient to "achieve an appropriate total punishment" or if a consecutive sentence is "necessary to fashion a sentence resulting in a reasonable incremental punishment for the multiple offenses." See USSG Sec. 5G1.3, comment. (n. 3 & illustrations); see also Redman, 35 F.3d at 441.
 
 
 20
 This matter is remanded to the district court for the limited purpose to perform the commentary methodology or, if the district court rejects the commentary methodology, to state the reasons for so doing.
 
 PALMA
 
 21
 Palma raises five issues on appeal. However, because we agree that the district court erred in failing to instruct on the defense theory of entrapment, we find it unnecessary to address the other issues.
 
 
 22
 This circuit is split on the proper standard of review of the district court's decision whether or not to give an entrapment instruction--de novo or abuse of discretion. United States v. Sotelo-Murillo, 887 F.2d 176, 179-80 (9th Cir.1989).
 
 
 23
 The defense of entrapment has two elements: (1) government inducement of the crime, and (2) the absence of predisposition. United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992). If entrapment is at issue, "the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." Jacobson v. United States, 503 U.S.540, 549 (1992).
 
 
 24
 The inducement must come from someone acting on behalf of the government. United States v. Smith, 924 F.2d 889, 898 (9th Cir.1991).
 
 
 25
 Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. See United States v. Garza-Juarez, 992 F.2d 896, 909 (9th Cir.1993) (citations omitted).
 
 
 26
 United States v. Davis, 36 F.3d 1424, 1430 (9th Cir.1994); see also United States v. Manarite, 44 F.3d 1407, 1418 (9th Cir.1995).
 
 
 27
 Recently, we have has discussed the rules a district court should follow in deciding whether to give an entrapment instruction. In United States v. Becerra, 992 F.2d 960, 963 (9th Cir.1993) we stated:
 
 
 28
 A defendant is entitled to an entrapment instruction if he can present some evidence that a government agent induced him to commit a crime that he was not predisposed to commit. Only slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is " 'weak, insufficient, inconsistent, or of doubtful credibility.' " If the trial court finds that the evidence presents no genuine dispute about whether the defendant was entrapped, there is no factual issue for the jury, and the court must deny the instruction. The failure to give an entrapment instruction, where one is required, is reversible error.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 In evaluating predisposition, we examine five factors:
 
 
 32
 (1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement.
 
 
 33
 Although none of these factors alone controls, the most important is the defendant's reluctance to engage in criminal activity.
 
 
 34
 Becerra, 992 F.2d at 963 (9th Cir.1993) (internal citations omitted).
 
 
 35
 The government argues on appeal as it successfully argued below that because Tiocao initially introduced Palma to SA Donner and told Palma that SA Donner was looking for drugs, there could be no government inducement. United States v. Davis, 36 F.3d 1424, 1431 (9th Cir.1994) (derivative entrapment does not entitle a defendant to an entrapment instruction).
 
 
 36
 Contrary, however, to the government's position on inducement, is the testimony of Palma. He testified that it was SA Donner who was asking for the drugs after Tiocao introduced them. He testified that SA Donner was a large man with long hair who talked to him in a hard, firm voice and who was always talking about his "guys in Las Vegas." Palma took this to mean bad people. At the garage on October 23, SA Donner told Palma that he, Donner, would get his "ass kicked" if he didn't come up with the drugs soon, and that something bad would happen. Palma saw people shortly thereafter photographing his house and his vehicle's license plate, and his wife received a phone call that said to "tell your husband to watch out for his soul." Furthermore, Palma testified that he did the deal so they would leave him alone about drugs, and buy cars from him. Thus, Palma has presented some evidence that he was induced to commit the crime.
 
 
 37
 Because the government does not believe there was evidence of inducement, they do not address the issue of predisposition before this court. The defendant presented evidence of the absence of predisposition--he put on character witnesses who testified to his reputation for honesty, and he testified himself that he had never sold drugs previously. He testified that he did not make any money from the transactions. Further, he points to the fact that it took over 6 hours to get the one ounce of methamphetamine on October 23 as evidence of his reluctance to do the deal. His testimony that he was always trying to talk about cars, not drugs, also is evidence that he was reluctant to sell drugs. Palma, therefore, has presented some evidence that he was not predisposed to commit the crime.
 
 
 38
 In Becerra, defendant Larizza who had prior cocaine convictions testified that he was afraid of the mob. According to Larizza, the undercover detective who was posing as a mobster from New York threatened him and his family, promised him money and assured him that they would start a business together. This testimony, even though "weak, insufficient, inconsistent, or of doubtful credibility" was sufficient to entitle the defendant to an instruction on entrapment at his new trial. Becerra, 992 F.3d at 963-64.
 
 
 39
 Similarly, in United States v. Kessee, 992 F.2d 1001 (9th Cir.1993), we held that it was error not to instruct on entrapment. The defendant, Kessee, took the stand and testified that he was entrapped by one Bawa. Bawa drove a Mercedes and flashed hundred dollar bills, but Kessee initially refused to sell drugs for Bawa. However, because Kessee had just lost both his jobs, "he yielded to Bawa's repeated suggestions, and agreed to sell drugs." Id. at 1003. Kessee's story was rather incredible because he was caught in lies and half truths under cross-examination. He testified that Bawa pressured him into selling drugs for him, but yet in taped conversations Kessee was attempting to sell drugs to Bawa. On the tapes he used slang for the drugs, but said he did so to impress Bawa, and he boasted to the police that he had done over fifty narcotics transactions. He claimed he lied to the police in order to obtain favorable sentencing treatment. However, based on this evidence, we ruled that Kessee was entitled to an entrapment instruction. Id. at 1004.
 
 
 40
 Here, as in Becerra and Kessee, the defendant took the stand and "testified under oath to an account which, if true, could justify a finding of entrapment, he established a genuine issue of fact." Id. Under either standard--de novo or abuse of discretion--Palma has demonstrated that the district court erred in failing to give an instruction on entrapment. Therefore, we reverse Palma's conviction and remand for a new trial.
 
 CONCLUSION
 
 41
 We affirm Tiocao's conviction but VACATE his sentence, and REMAND for resentencing. The limited purpose of the remand is for the district court to consider U.S.S.G. Sec. 5G1.3 in resentencing the defendant.
 
 
 42
 Palma's conviction is REVERSED and the case is REMANDED for a new trial.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3