TORRUELLA, Circuit Judge
(Dissenting in Part).
The majority holds that, as a matter of law, repeated suggestions cannot give rise to a defense of entrapment. I respectfully dissent. The purpose of sting operations is to bring willing perpetrators to justice, not to induce law-abiding citizens to err. Repeated suggestions are precisely one way to induce law-abiding citizens to err—especially where, as here, those law-abiding citizens are in dire financial straits.
Because the majority has already laid out the facts of this case, I summarize only the key facts here. Salinas-Acevedo was in debt, had a little daughter, and another child on the way—his financial situation was difficult, to say the very least. Both the government agent and the middlemen knew this. Still, Salinas-Acevedo showed great reluctance to become involved in any illegal drug transaction. The middleman had to approach Salinas-Acevedo multiple times in order to induce him to participate in the drug transaction. Although Salinas-Acevedo initially agreed, he later pulled out of the transaction on account of his little girl. It was only after being approached by the middleman again that Salinas-Acevedo finally gave in and reluctantly participated in the drug transaction. The middleman’s actions were all on the direct instructions of the government agent. Indeed, the final instructions of the government agent to the middleman were “Hey, get that guy,” “find, find that guy,” and, once more, “[fjind that guy”—all referring to Salinas-Acevedo.
I agree with the majority that we are here faced with derivative entrapment, and that the test for that has five prongs:
(1) a government agent specifically targeted the defendant in order to induce him to commit illegal conduct; (2) the agent acted through the middleman after other government attempts at inducing the defendant had failed; (3) the government agent requested, encouraged, or instructed the middleman to employ a specified inducement, which could be found improper, against the targeted defendant; (4) the agent’s actions led the middleman to do what the government sought, even if the government did not use improper means to influence the middleman; and (5) as a result of the middleman’s inducement, the targeted defendant in fact engaged in the illegal conduct.
United States v. Luisi, 482 F.3d 43, 55 (1st Cir. 2007).
I also agree with the majority that the first two prongs of this test are satisfied— but unlike the majority, I believe that the third prong is satisfied as well.[11]
The majority takes great comfort in the fact that‘“[u]nder the case law the government would be responsible if [its agent] told [the middleman] to apply the pressure or inducement later deemed improper, and perhaps if [the government agent] knowingly tolerated it, but not if [the government agent] were ignorant of it.” United States v. Rogers, 102 F.3d 641, 645 (1st Cir. 1996). The majority then reasons that there are no indications that the government agent engaged in any improper inducement; the majority emphasizes that even if the middleman somehow did en *435 gage in improper inducement, then there is no indication that the government agent had told the middleman to do so.
However, “examples of improper ‘inducement’ ” include the use of “ ‘repeated suggestions’ which succeeded only when the defendant had lost his job and needed money for his family’s food and rent.” United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994) (Breyer, C.J.) (quoting United States v. Kessee, 992 F.2d 1001, 1003 (9th Cir. 1993)). In the present case, the government agent told the middleman to engage in exactly this kind of improper inducement, for the government agent told the middleman to approach Salinas-Acevedo repeatedly about the drug transaction, knowing full well that Salinas-Acevedo had serious difficulties providing for his family, and that he had declined to participate numerous times.[12]
Other circuits have also found that repeated suggestions constitute improper inducement for entrapment purposes. See United States v. Mayfield, 771 F.3d 417, 435 (7th Cir. 2014) (en banc) (holding that improper inducement “may be repeated attempts at persuasion”); United States v. Kessee, 992 F.2d 1001, 1004 (9th Cir. 1993) (“[The government agent] induced [the defendant] to sell narcotics by repeated entreaties, which only became successful when [the defendant] had lost both his jobs and desperately needed the money ... A jury could have had a reasonable doubt as to inducement or lack of predisposition”); United States v. Burkley, 591 F.2d 903, 915 (D.C. Cir. 1978) (“[T]he trial judge correctly issued an entrapment instruction because (1) [the government agent]’s repeated requests constituted sufficient evidence of inducement”).
It is not surprising that our sister circuits have come out this way, because the Supreme Court has found entrapment (even as a matter of law) where repeated suggestions were involved.
Retracing the Supreme Court’s key entrapment cases may help illuminate the problem ... In Sorrells the Court found that an entrapment instruction was warranted ... the informant’s persistent appeal to military camaraderie qualified as a potentially entrapping inducement. [Sorrells v. United States, 287 U.S. 435, 441 [53 S.Ct. 210, 77 L.Ed. 413] (1932).] In Sherman the Court found entrapment as a matter of law ... the inducement there consisted of repeated requests from an informant posing as a fellow recovering addict who had fallen off the wagon. [Sherman v. United States, 356 U.S. 369, 371 [78 S.Ct. 819, 2 L.Ed.2d 848] (1958).] In Jacobson the Court found entrapment as a matter of law ... the inducement in that case was a two-year campaign of fake mail-order entreaties conditioning the defendant to believe that child porn was acceptable and encouraging him to purchase it. [Jacobson v. United States, 503 U.S. 540, 546-47 [112 S.Ct. 1535, 118 L.Ed.2d 174] (1992).]
... [In each of these cases] [t]he entrapment defense was available because the government’s solicitation of the crime *436 was accompanied by subtle and persistent artifices and devices that created a risk that an otherwise law-abiding person would take the bait.
Mayfield, 771 F.3d at 434 (emphasis added).
In sting operations, the Government should know when to take “no” for an answer, lest, as here, the “Government’s quest for conviction leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law.” Gendron, 18 F.3d at 961 (quoting Jacobson, 503 U.S. at 553-54, 112 S.Ct. 1535) (emphasis added in original).
I respectfully dissent.

. Because the majority does not believe that the third prong is satisfied here, it does not reach the fourth and fifth ones. For the same reason, the majority also does not reach the improper inducement prong of the entrapment analysis. On the facts of this case, I have no difficulty finding that all these prongs have been met.

. Another example of improper inducement is "dogged insistence until [defendant] capitulated”. Gendron, 18 F.3d at 961 (quoting United States v. Rodriguez, 858 F.2d 809, 815 (1st Cir. 1988) (alteration in original)); see also United States v. Montoya, 844 F.3d 63, 67 (1st Cir.2016) ("[Improper inducement] might include, for example, ... relentless insistence ... to participate in a criminal scheme”). In the present case, I have no difficulty finding that the government agent told the middleman to engage in "dogged insistence” or “relentless insistence.” This dissent focuses on "repeated suggestions” in light of defendant's difficult financial situation, because the facts of this case shout out "repeated suggestions” even more loudly than they do "dogged insistence” and “persistent insistence.”