999 F.2d 546
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Wallace WALKER, Defendant-Appellant.
 No. 92-50087.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1993.
Decided July 26, 1993.
 
 Before BROWNING, BRIGHT,* and TANG, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gary Wallace Walker appeals his conviction for violating 21 U.S.C. § 841(a)(1), conspiracy to manufacture 100 grams or more of methamphetamine. Walker contends the district court erred in failing to require the government to prove he had not been entrapped and in failing to hold an evidentiary hearing to consider his motion for a new trial. We affirm.
 
 I.
 
 3
 In 1989, Walker's neighbors complained about heavy traffic to and from the Walkers' home. Suspecting drug activity, the DEA investigated and obtained a warrant to search the residence. On August 29, 1989, DEA Agent Stafford executed the warrant, and seized ephedrine, a precursor chemical that is the main ingredient in the manufacture of methamphetamine, and various drug trafficking paraphernalia containing methamphetamine residue.
 
 
 4
 In September of 1989, Walker moved to a new residence, where his new neighbors complained about a marked increase in traffic to the residence. One neighbor testified about seeing a car in a nearby parking lot immediately after leaving the residence and observing the driver appear to inject something into his arm. The traffic continued until the spring of 1991.
 
 
 5
 As a result of alleged drug trafficking activities, Walker was arrested twice. The first arrest followed the August 29, 1989 search of the first residence. Walker was convicted of methamphetamine possession and served time from August, 1990 to October, 1990.
 
 
 6
 Walker's second arrest and conviction, the subject of the instant case, came as the result of an undercover operation involving the sale of five 55-pound drums of ephedrine from Gary Bobel to Doug Leal. Bobel was a drug trafficker awaiting sentencing on a conspiracy to distribute marijuana charge. In July of 1989, he had received $250 from the DEA for information he provided. He contacted the DEA again in November of 1990 with an offer to provide assistance on the present case.
 
 
 7
 The parties disagree in their renditions of how Walker and Bobel met. Walker explains that he purchased some bottles of rare wine at $600, below market price, at a swap meet he attended prior to his August 1990 incarceration. He claims his auto mechanic introduced him to Gary Bobel in July of 1990, suggesting Bobel might help him sell the vintage wines. Bobel took seven bottles in exchange for $300; Walker states Bobel told him he could get $3,300 for the bottles. He later returned four bottles and kept three.
 
 
 8
 Bobel testified that Walker's auto mechanic gave him Walker's name as someone who dealt with large quantities of methamphetamine and would perhaps be interested in purchasing ephedrine. He testified that Walker gave him seven bottles of wine for $300, but stated that he and Walker did not fix a price for the wine and Walker never contacted Bobel regarding more money for the bottles. He added that during Walker's incarceration from August 1990 through October 1990, he contacted the family once or twice to determine the date of Walker's release. Upon his release in October of 1990, Walker spoke with Bobel again about the ephedrine transaction.
 
 
 9
 Walker testified to a different scenario. He asserts that after he delivered the wine to Bobel, Bobel proposed the sale of a large quantity of ephedrine. Walker states he told Bobel he was not interested, and only after persistent harassment and a threat not to pay for the wine did Walker look for a buyer for Bobel's ephedrine.
 
 
 10
 Both parties agree that Walker then located Doug Leal, a co-defendant in this case, and brokered a deal selling Bobel's ephedrine to Leal. The DEA recorded conversations between Bobel and Walker on November 26, 27, and 28, arranging the details of the transaction. On November 28, 1990, Leal met Bobel and DEA Agent Davis to finalize the sale. The parties met again the next day, and Walker was arrested when he returned to the location later that afternoon to receive the $4,000 profit Bobel owed him from the arrangement.
 
 
 11
 On December 7, 1990, a grand jury charged Walker and seven co-defendants with conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Walker pled not guilty and was tried along with one co-defendant before Judge Marilyn L. Huff in the Southern District of California. Judge Huff gave the Ninth Circuit pattern jury instruction on entrapment. On July 23, 1991, the jury failed to return a verdict and Judge Huff declared a mistrial.
 
 
 12
 The case was retried before visiting Judge M.D. Crocker. Judge Crocker gave a different entrapment instruction, adopting Instruction No. 13.09 from Devitt and Blackmar's Federal Jury Practice and Instructions. On September 17, 1991 the jury convicted Walker.
 
 
 13
 On September 24, Walker moved for a new trial. After twice continuing the hearing on the motion, on November 25, 1991, the district court denied the motion for a new trial. Walker was sentenced to 280 months (twenty-three years, four months) imprisonment and ten years supervised release. Walker then filed this timely appeal.
 
 II.
 
 14
 Walker claims the district court erred in denying an acquittal on the entrapment defense. He contends Bobel, acting as a government agent, suggested the ephedrine deal and, after repeated refusals, he agreed to the deal only after Bobel coerced him into arranging the sale in exchange for the roughly $3,000 Bobel owed him for the wine. He asserts his prior conviction for possession of a small amount of methamphetamine fails to show predisposition to deal in large quantities of ephedrine. He claims he desperately needed money to support his family because of his pending period of incarceration, and Bobel took advantage of that need to persuade Walker to assist him in the ephedrine deal. Walker further contends his behavior during the transaction is legally irrelevant to the determination of predisposition, which involves his state of mind prior to the initial inducement.
 
 
 15
 To demonstrate he was entrapped, Walker must show he was induced to commit the crime by a government agent and he was not otherwise predisposed to commit the crime. United States v. Smith, 924 F.2d 889, 898 (9th Cir.1991). Because the initial burden is light, entrapment is generally a question for the jury. United States v. Marcello, 731 F.2d 1354, 1357 (9th Cir.1984). The government must prove beyond a reasonable doubt that Walker was predisposed to commit the crime. United States v. Hoyt, 879 F.2d 505, 509, amended on other grounds by 888 F.2d 1257 (9th Cir.1989). Five factors are significant in assessing Walker's predisposition: "(1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement." United States v. Citro, 842 F.2d 1149, 1152 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 16
 The guilty verdict embodied a finding that Walker was predisposed to commit the crime and he was not entrapped. In reviewing Walker's appeal from the denial of his motion for acquittal based on entrapment, we must determine whether a rational jury could have found the essential elements beyond a reasonable doubt. Id. at 1151. Viewing the highly disputed facts in this case in the light most favorable to the Government, the jury rationally could have found Walker predisposed to sell the ephedrine. The testimony about traffic to the Walker residence would support a finding of Walker's reputation as a drug trafficker. Walker stood to make a $4,000 profit in the transaction. Although Bobel initially suggested the transaction, the jury could find he was not acting as a government agent at the time. Taking as true the evidence presented by the government, a rational trier of fact could have found Walker was not entrapped beyond a reasonable doubt.
 
 III.
 
 17
 Walker further contends the district court erred in denying him the opportunity to show it was reasonably possible that the exculpatory evidence the government failed to produce, as required under Brady v. Maryland, 373 U.S. 83 (1963), would have changed the result of the proceeding. He argues that because the judge hearing his motion for a new trial presided over the first trial but not the second, the judge did not hear information about the investigation and testimony that was presented only at the second trial and had to rely on representations of counsel. He concludes that to determine whether newly discovered evidence allegedly suppressed by the government would constitute a Brady violation, the court must hear the proffered testimony.
 
 
 18
 To obtain a new trial based on newly discovered evidence, a defendant must meet a strict standard, showing that the evidence is newly discovered, material, and not cumulative or impeaching, that the defendant has used diligence in discovery, and that a new trial would probably result in acquittal. United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir.1991). Evidence is material for Brady purposes if there is a reasonable probability it would have altered the outcome of the trial. United States v. Bagley, 473 U.S. 667, 682 (1985). A court should grant a new trial only in "exceptional circumstances in which the evidence weighs heavily against the verdict." United States v. Chen, 754 F.2d 817, 821 (9th Cir.), cert. denied, 471 U.S. 1139 (1985). Nevertheless, the court should conduct an evidentiary hearing on the claim unless the record conclusively demonstrates its lack of merit. Baumann v. United States, 692 F.2d 565, 573 (9th Cir.1982).
 
 
 19
 We review the denial of a motion for a new trial for abuse of discretion. Citro, 842 F.2d at 1151. In this case, Walker fails to allege with specificity the evidence he claims will show a Brady violation. He refers to "investigatory activity that occurred in 1990 with results favorable to the defendant," Brief for Appellant at 45, but does not make a showing of materiality. There is no indication the new evidence would affect the outcome of the trial, and the district court was within its discretion to deny the motion for new trial without an evidentiary hearing.[1]
 
 IV.
 
 20
 Accordingly, we affirm the district court's denial of the motion for acquittal and/or new trial.
 
 
 
 *
 The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Walker also contends the district court erred in substituting the Devitt and Blackmar jury instruction for the Ninth Circuit pattern instruction at the second trial, specifically objecting to an example given in the Devitt and Blackmar instruction. Because Walker did not raise this claim before the district court and, in our view, the use of the instruction does not constitute plain error, we do not address the merits of the claim. United States v. Snider, 957 F.2d 703, 706 n. 1 (9th Cir.1992)