15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bill Don PEARSON, Arthur Robert Pearson, and Tommy Gibbons
Pearson, Defendants-Appellants.
 Nos. 92-10554, 92-10555 and 92-10608.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided Dec. 7, 1993.
 
 1
 Before: D.W. NELSON and NORRIS, Circuit Judges, and BELLONI, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Brothers Bill Don Pearson ("Bill Don"), Arthur Robert Pearson ("Bobby"), and Tommy Gibbons Pearson ("Tommy") appeal their convictions and sentences for conspiracy to manufacture methamphetamine, attempted manufacture of methamphetamine, and manufacturing methamphetamine in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Secs. 841(a)(1) and 846. We have jurisdiction under 18 U.S.C. Sec. 3742 and 28 U.S.C. Sec. 1291. We affirm.
 
 I. Denial of Motion to Suppress
 
 4
 Bobby and Bill Don challenge the district court's denial of their motions to suppress evidence seized during the 1987 and 1990 searches. The district court's denial of a motion to suppress is reviewed de novo, United States v. Homick, 964 F.2d 899, 903 (9th Cir.1992), as is its ruling on the existence of probable cause. United States v. Elliot, 893 F.2d 220, 222 (9th Cir.), amended on other grounds, 904 F.2d 25 (9th Cir.), cert. denied, 498 U.S. 904 (1990). The district court's findings of fact are reviewed for clear error. Id. The reviewing court must determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 239-40 (1983); United States v. Ayers, 924 F.2d 1468, 1478 (9th Cir.1991).
 
 A. 1987 Searches
 
 5
 Bobby argues that items seized during the 1987 searches should have been suppressed because the affidavit failed to establish probable cause. However, a confidential informant provided substantial testimony regarding Bobby's activities at 4145 North Spring Street which was confirmed by extensive government surveillance. Therefore, the district court had a substantial basis for concluding that probable cause existed in the 1987 searches.
 
 B. 1990 Searches
 
 6
 Bobby and Bill Don challenge the denial of their motions to suppress evidence seized in the 1990 searches. Bill Don argues that the magistrate did not have a substantial basis for issuing the search warrant for Sharon's Plant oasis, and that the items seized were not particularly described in the warrant. The affidavit mentions two confidential informants who provided Agent Mauser with information regarding Tommy and Bobby's methamphetamine manufacturing locations, and Mauser's independent investigation corroborated this information. It also details Mauser's continuing contacts with the informants and Tommy, and the results of surveillance at all the manufacturing sites. Some of the informant's allegations were corroborated by Mauser's independent investigation. In addition, Iverson and Pearson Stanley provided complementary information, some of which was verified by independent investigation. Based on this information, the district court correctly found that the affidavit for the searches was substantially detailed and supported the issuance of the warrant.
 
 II. Denial of Motions to Sever
 
 7
 Bill Don and Bobby both appeal the denials of their repeated motions to sever. The denial of a motion to sever is reviewed for abuse of discretion. United States v. Cuozzo, 962 F.2d 945, 949 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992). The defendant "bears the burden of proving that a joint trial causes such 'clear,' 'manifest,' or 'undue' prejudice that the accused is denied a fair trial." Id. at 950.
 
 
 8
 Bill Don argues that he was denied a fair trial, but the record does not support this. His limited involvement in the conspiracy was relevant only at sentencing, where the jury played no role, and he admits that the incest allegations regarding Bobby were not mentioned to the jury. The district court specifically instructed the jury to regard Beschman's testimony regarding Iverson's credibility with caution, and to consider the evidence against each defendant separately. Therefore, Bill Don has failed to show the requisite level of prejudice to entitle him to severance.
 
 
 9
 Bill Don and Bobby argue that the overwhelming evidence of Tommy's guilt prejudiced them. However, the mere fact that a criminal defendant is jointly tried with a more culpable codefendant is not alone sufficient to constitute abuse of discretion. See United States v. Van Cauwenberghe, 827 F.2d 424, 432 (9th Cir.1987), cert. denied, 484 U.S. 1042 (1988). Where, as here, the district court instructed the jury to consider the guilt or innocence of each codefendant separately, in light of the evidence against that defendant, the jury is presumed to have obeyed. Id.
 
 
 10
 Relying on United States v. Hernandez, 952 F.2d 1110 (9th Cir.1991), cert. denied, 113 S.Ct. 334 (1992), Bobby and Bill Don argue that the district court should have instructed the jury to ignore the familial relationship among the defendants. However, Hernandez does not require such an instruction, and given the proper general limiting instructions, the failure to give a "family" instruction was not an abuse of discretion.
 
 
 11
 More importantly, testimony regarding Tommy's statements in furtherance of the conspiracy would have been admissable under Fed.R.Evid. 801(d)(2)(E) even if Bobby and Bill Don had been tried separately. See, e.g., United States v. Ramirez, 710 F.2d 535, 547 (9th Cir.1983). Before a coconspirator's statement may be admitted under Rule 801(d)(2)(E), "[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.' " Bourjaily v. United States, 483 U.S. 171, 175 (1987) (quoting text of Rule). A finding that Tommy was a member of the conspiracy may be inferred from the court's determinations that the statements were in furtherance of the conspiracy. See United States v. Williams, 989 F.2d 1061, 1067 (9th Cir.1993). The district court's decision to admit coconspirator statements is reviewed for abuse of discretion, while underlying factual determinations are reviewed for clear error. United States v. Arambula-Ruiz, 987 F.2d 599, 607 (9th Cir.1993).
 
 
 12
 The government maintained that the sale of the 72-liter lab was relevant to the conspiracy, and did not "concede" that the only link between the sale and the conspiracy was the time period involved. Tommy's statements were made in order to establish an ongoing relationship with Mauser regarding the manufacture of methamphetamine. In addition, the government's laboratory expert's testimony linked the transaction to the alleged conspiracy, and the government showed that the other conspirators benefitted because the fact that Tommy sold the lab was in furtherance of expanding their methamphetamine operations. The district court did not leave the question of admissibility to the jury, but instead simply pointed out that the government retained the burden of proving the existence of a single conspiracy beyond a reasonable doubt. Therefore, the district court did not abuse its discretion in finding Tommy's statements were made in furtherance of the conspiracy, and Bill Don and Bobby were not prejudiced by the evidence of Tommy's guilt.
 
 
 13
 III. Restriction of Scope of Defendant's Cross-Examination
 
 
 14
 Bill Don argues that the district court erred by preventing him from impeaching Iverson regarding an alleged automobile accident scam. The district court's decision to limit the scope of cross-examination is reviewed for abuse of discretion. United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). The district court's decision to bar questioning regarding Iverson's prior misconduct was not an abuse of discretion, because evidence of a witness' past misconduct, other than conviction of a crime, is inadmissable for the purpose of attacking the witness' credibility. See United States v. Noti, 731 F.2d 610, 612-13 (9th Cir.1984).
 
 IV. Prosecutorial Vouching
 
 15
 Tommy, Bobby, and Bill Don argue that the prosecutor impermissibly vouched for the credibility of witnesses Cullum and Marino by asking them about the truthfulness provisions of their plea agreements. Because no objections were raised at trial, we review under a plain error standard. See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993).
 
 
 16
 A reference to the 'truthful testimony' provisions of a witness's agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain. See United States v. Monroe, 943 F.2d 1007, 1013 (9th Cir.1991). Because Bobby's counsel attacked Marino's credibility in his opening statement, the prosecutor's reference to the perjury provisions did not constitute vouching.
 
 
 17
 In addition, the prosecutor's questioning of Cullum about the truthfulness provisions of his plea agreement was harmless error. Cullum provided no evidence against Bill Don and very little against Tommy; much of his testimony against Bobby was corroborated by Iverson and Pearson Stanley. The district court instructed the jury to consider the testimony of informants and immunized witnesses "with greater caution than that of ordinary witnesses," and noted that the jury could consider Cullum's felony conviction in evaluating his testimony. Therefore, the vouching regarding Cullum's testimony was harmless.
 
 
 18
 V. The District Court's Admission of Bobby's Hearsay
 
 
 19
 Tommy objects to the admission, through Marino's testimony, of hearsay statements made by Bobby regarding the conduct charged in count 10. Tommy argues that the admission of these statements denied him his rights under the Confrontation Clause in violation of Bruton v. United States, 391 U.S. 123 (1968). Because Tommy did not object at trial, we review for plain error. United States v. Dischner, 974 F.2d 1502, 1515 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993).
 
 
 20
 Bruton's holding that it is reversible error to admit into evidence a codefendant's confession which also inculpates the defendant does not apply to coconspirator statements which are admissable under Fed.R.Evid. 801(d)(2)(E). See United States v. McCown, 711 F.2d 1441, 1448-49 (9th Cir.1983). Marino's testimony shows that she was a member of the conspiracy during the relevant time period, and Agent Mauser provided ample evidence that Tommy was also involved in the conspiracy. Bobby's statements were made in furtherance of the conspiracy to the extent that they were made to keep her abreast of the conspiracy's ongoing activities. See United States v. Nazemian, 948 F.2d 522, 529 (9th Cir.1991), cert. denied, 113 S.Ct. 107 (1992). Thus, Marino's statements were admissable under Rule 801(d)(2)(E), and there was no Bruton violation.
 
 VI. Sufficiency of Evidence to Convict
 
 21
 Bill Don and Bobby challenge the sufficiency of the evidence used to convict them. We review to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (internal citation omitted).
 
 A. Count One: Conspiracy
 
 22
 A conspiracy consists of an agreement to accomplish an illegal objective, combined with the intent to commit the underlying offense and one or more overt acts in furtherance of the illegal purpose. United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984) (citation omitted), cert. denied, 471 U.S. 1103 (1985).
 
 
 23
 Bobby argues that the evidence proved the existence of four separate conspiracies, rather than the single conspiracy charged in the indictment. We consider the following factors to distinguish single conspiracies from multiple conspiracies: the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals. Id. There was ample evidence from which the jury could conclude that a single conspiracy existed in which Bobby was a member.
 
 
 24
 Iverson's testimony described Bobby's purchase of the "Victorville" methamphetamine formula and the assistance Bobby provided to Tommy to obtain supplies and set up his own laboratory. Agent Mauser provided substantial information about Tommy's efforts to manufacture methamphetamine, and Marino, Pearson Stanley, and Cullum testified that they had participated in cooks with Bobby at various locations beginning in 1987. The evidence at trial suggested that although they may have operated separate facilities at one time, Bobby and Bill Don were engaged in a common manufacturing scheme. This evidence was sufficient for a reasonable jury to conclude that Bobby was engaged in a single ongoing venture during the time period charged in the indictment.
 
 
 25
 While Bill Don concedes that his brothers were involved in a conspiracy to manufacture methamphetamine, he argues that the evidence was insufficient to convict him as a participant. Once a conspiracy's existence has been established, however, "evidence of only a slight connection" is needed to support a conviction for participating in that conspiracy. United States v. Sanchez-Mata, 925 F.2d 1166, 1167 (9th Cir.1991).
 
 
 26
 Iverson described a conversation where Bill Don asked for Iverson's help in procuring enough hydriotic acid to enable Tommy and Bobby jointly to produce fifty pounds of methamphetamine, which Bill Don would then sell. The government introduced evidence of the glassware stored at Sharon's Plant Oasis and of the controlled delivery of hydriotic acid to Bill Don in September 1990. Given this evidence, a reasonable jury could have found that Bill Don was part of the conspiracy as of 1989.
 
 B. Counts Two and Three: Attempt
 
 27
 A conviction for attempt requires the government to prove both culpable intent and conduct constituting a substantial step toward the commission of the crime that is in pursuit of that intent; however, mere preparation does not constitute a substantial step. See United States v. Buffington, 815 F.2d 1292, 1301 (9th Cir.1987). Bobby and Bill Don characterize their conduct as no more than preparation for manufacturing.
 
 
 28
 The government seized boxes of gas masks and rubber gloves, a compressed gas cylinder, cans of acetate and Freon, and other items which the lab expert testified were "consistent with the makeup of a clandestine laboratory that manufactures controlled substances." Boxed glassware was also found at Sharon's Plant Oasis in 1990, along with the hydriotic acid ordered by Bill Don. None of the cases Bobby and Bill Don rely upon explicitly require complete preparation. Therefore, the government presented sufficient evidence to show that Bobby and Bill Don took substantial steps toward the manufacture of methamphetamine.
 
 
 29
 C. Count Four: Manufacturing at Flower Street
 
 
 30
 Bobby alleges that there was no evidence that methamphetamine had been produced at the Flower Street laboratory as charged in count four. However, Cullum testified that he made methamphetamine at the Flower Street garage, Iverson confirmed that methamphetamine was produced there, and Pearson Stanley testified that she offered to let Bobby use her house. This evidence could have convinced a reasonable jury that Bobby manufactured methamphetamine at the Flower Street address.
 
 
 31
 D. Count Ten: Manufacturing at Dolan Springs
 
 
 32
 Bobby argues that the evidence was insufficient to convict him of manufacturing methamphetamine with Tommy at Cox's Dolan Springs Property between October 1988 and April 1989. He first contends that the indictment was constructively amended as to count ten because Agent Mauser's testimony before the grand jury relied upon different evidence than that used at trial. However, there was no constructive amendment in the present case. Bobby was convicted of the precise crime charged in the indictment: manufacturing 100 grams or more of methamphetamine between October 1988 and April 1989 near Dolan Springs. The only difference between the evidence presented to the grand and petit juries was its source (i.e., Iverson, Cullum, and Pearson Stanley versus Marino). Therefore, no constructive amendment occurred.
 
 
 33
 Bobby also argues that the evidence was insufficient to convict him on this count. Marino testified to several conversations with Bobby regarding his activity in Dolan Springs, and the government's expert stated that a clandestine laboratory had existed on the Dolan Springs site at one time. From this evidence, a reasonable jury could conclude that Bobby manufactured methamphetamine in Dolan Springs.
 
 VII. The Propriety of Sentencing
 
 34
 Bobby, Bill Don, and Tommy challenge their sentences. The district court's application of the Guidelines is reviewed de novo, while its factual findings are reviewed for clear error. United States v. Wilson, 900 F.2d 1350, 1355 (9th Cir.1990).
 
 
 35
 A. Calculation of the amount of methamphetamine
 
 
 36
 Bobby and Bill Don argue that the district court incorrectly used the preponderance standard of proof in making its factual findings. However, the case upon which the brothers rely, United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1564 (1992), is inapplicable. Restrepo held that as a general rule the preponderance of the evidence standard applies to factual determinations at sentencing, but acknowledged that there might be an exception "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of the conviction." Id. at 659-60. United States v. Harrison-Philpot, 978 F.2d 1520 (9th Cir.1992), cert. denied, 113 S.Ct. 2392 (1993), requires that the defendant suffer an enhancement for uncharged conduct for the Restrepo exception to apply. Like Harrison-Philpot's sentence, the Pearson brothers' sentences were not enhanced; they were simply calculated with regard to the conspiracy as a whole, rather than the amount of drugs seized. Therefore, the district court did not err by using the preponderance standard.
 
 
 37
 The brothers also argue that the district court failed to make adequate findings as to the amount attributable to each defendant. Under the Guidelines each conspirator, for sentencing purposes, is to be judged not on the amount of the entire conspiracy but on the basis of the quantity of drugs which he reasonably foresaw or which fell within 'the scope' of his particular agreement with the conspirators. United States v. Petty, 992 F.2d 887, 890 (9th Cir.), amended on other grounds, 992 F.2d 1015 (9th Cir.1993).
 
 
 38
 The court found that the total amount of methamphetamine the laboratory was capable of producing was foreseeable to Bobby and Tommy, and sentenced them accordingly; it sentenced Bill Don on a lesser amount that reflected his involvement. Although the presentence report acknowledged that Bobby and Tommy worked separately, it also concluded that they were both involved throughout the ongoing conspiracy. The findings were thus sufficiently individualized to reflect each brother's role.
 
 
 39
 Bill Don and Bobby assign error to the district court's conclusion that the conspiracy was capable of producing 104 pounds of methamphetamine. The capability of a drug operation is reviewed for clear error. United States v. Williams, 989 F.2d 1061, 1073 (9th Cir.1993). The court made specific findings regarding the labs, and also considered Tommy's statement that he had manufactured 104 pounds with the 72-liter lab he sold to Agent Mauser. While Bill Don and Bobby argue that any estimate of manufacturing capacity was pure conjecture, estimation of laboratory capacity is an accepted method of sentencing (although this circuit has not adopted a test for such calculations). See e.g., United States v. Putney, 906 F.2d 477, 479 (9th Cir.1990). A drug lab's potential remains the same whether controlled substances are seized or not. See United States v. Bertrand, 926 F.2d 838, 847 (9th Cir.1991). Because the district court made specific findings as to the amount that could be manufactured, and the absence of controlled substances at the site does not defeat a district court's estimation of laboratory capacity, we affirm the district court's findings.
 
 B. Bobby's Upward Adjustment
 
 40
 Bobby argues that the district court erred by awarding him a two-point upward adjustment for being a manager or organizer under U.S.S.G. Sec. 3B1.1(c). The district court's finding that a defendant is a manager, organizer, or supervisor of a criminal activity is a factual finding reviewed for clear error. United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991). In order for Sec. 3B1.1(c) to apply, the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990).
 
 
 41
 Iverson's testimony characterized Bobby as the leader of the conspiracy and included numerous examples of his own supervision by Bobby. Furthermore, Marino, Cullum, and Pearson Stanley described Bobby's supervisory role over the cooks in which they participated. Given this evidence, the district court's conclusion was not clearly erroneous.
 
 
 42
 C. Denial of Downward Departure for Bobby and Tommy
 
 
 43
 Bobby and Tommy both contend that the district court erred in denying them downward departures for acceptance of responsibility under U.S.S.G. Sec. 3E1.1. Whether a defendant has accepted responsibility is a factual question reviewed for clear error, and the district court's conclusion will not be disturbed "unless it is without foundation." United States v. Aichele, 941 F.2d 761, 767 (9th Cir.1991) (internal quotation omitted). In the absence of any indicia of contrition, a reduction for acceptance of responsibility is unwarranted. Id.
 
 
 44
 Bobby contends that he did not accept responsibility before the district court because of the certainty that his convictions would be appealed. In the event that the appeal fails, he asks for a limited remand for the purpose of assessing his acceptance of responsibility in light of additional information. Because there is no legal precedent that supports a limited remand for reassessment of acceptance of responsibility, we reject Bobby's argument and uphold the district court's denial.
 
 
 45
 Tommy argues that although he initially declined to discuss his role in the offense, subsequent to the initial interview he did accept responsibility, and that his delay in acceptance should be overlooked because of his bipolar illness. The district court complied with Fed.R.Crim.P. 32(c)(3)(d) by making a specific finding that Tommy had not accepted responsibility. Furthermore, there is no evidence in the record that Tommy accepted responsibility. His objection to the presentence report was for a minimal role that was inconsistent with the jury verdicts. Moreover, the district judge gave Tommy several opportunities to express remorse; each time, Tommy simply said "I'm sorry." Therefore, the district court did not err by refusing to allow Tommy a downward departure.
 
 
 46
 VIII. Permissibility of the Presentence Reports
 
 
 47
 At sentencing, Tommy objected that the presentence report contained only the statements of the prosecutor and case agent. On appeal, Tommy, Bobby, and Bill Don argue that the objection should have been sustained, and that the district court should have exercised its authority to order additional study to develop "the additional information that the court needs before determining the sentence be imposed." 18 U.S.C. Sec. 3552(b). While the probation service must make a presentence investigation and report, the probation officer need not go back and repeat each investigative step which the government and the defendants have taken. Inclusion of the statements by the government and by the defendants of their versions of the facts and their investigative information, clearly identified as to source in the report, is permissible. See United States v. Stemm, 847 F.2d 636, 640 (10th Cir.1988).
 
 
 48
 The presentence report clearly identified its source of information. Since the defendants declined to provide a version of the facts, only the government's version was available. The Pearsons, however, had ample opportunity to object to the facts as characterized in the presentence report. In fact, each brother submitted objections to the report, to which the probation officer responded in detail. Thus, no error occurred.
 
 IX. Bill Don's sentence
 
 49
 Bill Don argues that his Sentence constitutes cruel and unusual punishment. Bill Don was given the minimum sentence within the Guideline range, one month more than the applicable statutory minimum. The imposition of a mandatory ten year minimum sentence under 21 U.S.C. Sec. 841(b)(1)(A) for a first-time offender does not constitute cruel and unusual punishment. See United States v. Hoyt, 879 F.2d 505 (9th Cir.1989); see also Harmelin v. Michigan, 111 S.Ct. 2680 (1991). Therefore, we reject this argument.
 
 CONCLUSION
 
 50
 For the above reasons, we affirm the ruling of the district court.
 
 
 51
 AFFIRMED.
 
 
 
 *
 The Honorable Robert Clinton Belloni, Senior District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3